IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ARCHWAY INSURANCE SERVICES, LLC : CIVIL ACTION
: NO. 09-2711
v. :
:
JAMES RIVER INSURANCE COMPANY :

O'NEILL, J. DECEMBER 8, 2010

## MEMORANDUM

Plaintiff Archway Insurance Services, LLC seeks a refund of an allegedly unearned insurance premium it paid to defendant James River Insurance Company.[1] On September 21, 2010, I granted in part and denied in part James River's motion for summary judgment. I held as a matter of law, inter alia, that the professional liability component of the insurance policy at issue had not been cancelled and thus Archway was not entitled to a refund of the premium paid for that component. Because the evidence in the record did not allow me to determine what portion of the premium had been paid for the professional liability insurance, I ordered the parties to submit supplemental briefing on that issue. Presently before me are the briefs of the parties.

## BACKGROUND[2]

In 2006, Ardsley, with the assistance of its broker Archway, obtained an insurance policy from James River. That insurance policy provided both general and professional liability coverage for Ardsley's nursing home and assisted living facility. In exchange for this coverage, Ardsley paid to James River a premium of $257,100. The insurance policy itself did not, however, indicate how much of the premium was for the general liability insurance coverage and

---

[1] Archway is an assignee of the original insured, the Ardsley Group.

[2] I set forth the background of this case at length in my September 21, 2010 opinion.

how much was for the professional liability insurance coverage.

STANDARD OF REVIEW

Summary judgment will be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The party moving for summary judgment bears the burden of demonstrating that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Celotex, 477 U.S. at 322-23. If the movant sustains its burden, the nonmovant must set forth facts demonstrating the existence of a genuine dispute. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). A dispute as to a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). A fact is "material" if it might affect the outcome of the case under governing law. Id.

To establish "that a fact cannot be or is genuinely disputed," a party must:

> (A) cit[e] to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) show[ ] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). The adverse party must raise "more than a mere scintilla of evidence in its favor" in order to overcome a summary judgment motion and cannot survive by relying on unsupported assertions, conclusory allegations, or mere suspicions. Williams v. Borough of W.

Chester, 891 F.2d 458, 460 (3d Cir. 1989). The "existence of disputed issues of material fact should be ascertained by resolving all inferences, doubts and issues of credibility against" the movant. Ely v. Hall's Motor Transit Co., 590 F.2d 62, 66 (3d Cir. 1978) (citations and quotation marks omitted).

DISCUSSION

The question presented by James River (on which I requested briefs) is how much of the total $257,100 premium was paid for the general liability insurance. James River argues that the evidence establishes that Ardsley paid a total of $126,300 for its general liability insurance. Archway, however, moves for reconsideration of my September 21, 2010 decision that the professional liability insurance had not been cancelled.

I.  Archway's Motion for Reconsideration

Archway moves for reconsideration of my decision that Ardsley's professional liability insurance coverage had not been cancelled because it did not comply with Pennsylvania's Health Care Services Malpractice Act by notifying Pennsylvania's Insurance Commissioner of its intent to cancel its professional liability insurance. At my request, James River filed a responding brief.

A.  Legal Precepts

This Court has a strong interest in the finality of judgments. Motions for reconsideration therefore will be granted sparingly. Continental Cas. Co. v. Diversified Indus., Inc., 884 F. Supp. 937, 943 (E.D. Pa. 1995). Such a motion will be granted only when the party seeking reconsideration has demonstrated: (1) an intervening change in controlling law; (2) the availability of new evidence that was not available when the court entered judgment; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice. Max's Seafood Café

v. Quinteros, 176 F.3d 669, 677 (3d Cir. 1999) (citing N. River Ins. Co. v. CIGNA Reinsurance Co., 52 F.3d 1194, 1218 (3d Cir. 1995)).

B.  Application

1.  Procedural Compliance

James River argues that I should deny Archway's motion for reconsideration as untimely. Two Rules of Civil Procedure apply to the timing of Archway's motions. First, Rule 59(e) of the Federal Rules of Civil Procedure provides that "[a] motion to alter or amend a judgment must be filed no later than 28 days after the entry of judgment."[3] Second, Rule 7.1(g) of the Local Rules of Civil Procedure provides that "[m]otions for reconsideration or reargument shall be served and filed within fourteen (14) days after the entry of the judgment, order, or decree concerned." Archway did not file its motion until November 1, 2010–forty-one days after I entered the relevant Order.

I find that neither procedural rule bars the present motion. The twenty-eight day time limit set forth in Rule 59(e) applies only to "final judgments." See Lizardo v. United States, 619 F.3d 273, 283 (3d Cir. 2010) ("The time limit contained in Rule 59(e) establishes a check on a district court's ability to revisit its final judgment."). A final judgment is one that "ends the litigation on the merits and leaves nothing more for the court to do but execute the judgment." Digital Equip. Corp. v. Desktop Direct, Inc., 511 U.S. 863, 867 (1994); see also Berckeley Inv. Grp., Ltd. v. Colkitt, 455 F.3d 195, 202 (3d Cir. 2006) (defining "final judgment" as "an ultimate

---

[3] "A motion for reconsideration is treated as the 'functional equivalent' of a motion pursuant to Rule 59(e) which seeks to alter or amend a judgment." Liverman v. Gubernik, Nos. 10-1161, 10-2049, 10-2500, 10-2558, 2010 WL 4054195, at *1 n.2 (E.D. Pa. Oct. 15, 2010), citing 3039 B Street Associates, Inc. v. Lexington Ins. Co., No. 09-1079, 2010 WL 3431609, at *1 (E.D.Pa. Aug.27, 2010).

disposition on a cognizable claim for relief"). Under Rule 54(b) of the Federal Rules of Civil Procedure, a grant of a partial motion for summary judgment is not a final judgment unless "the court expressly determines that there is no just reason [to delay entering final judgment]." Because I have made no such determination, my partial grant of the summary judgment motion was not a final order subject to the provisions of Rule 59(e). See Freixenet, S.A. v. Admiral Wine and Liquor Co., 731 F.2d 148, 152 (3d Cir. 1984) ("The grant of partial summary judgment is not a final judgment . . . ."); Kimble v. Morgan Props., No. 02-0359, 2005 WL 2847266, at *3 n.4 (E.D. Pa. Oct. 25, 2005) ("Under the Federal Rules, a partial summary judgment is a pretrial adjudication, interlocutory in character . . . .").

On the other hand, Local Rule 7.1(g) applies to this case. Under the present circumstances, however, I will waive the application of the Local Rule. The Court of Appeals has decided that the district court has the authority to waive the application of the Local Rules of Civil Procedure where "(1) it has a sound rationale for doing so, and (2) so doing does not unfairly prejudice a party who has relied on the local rule to his detriment." United States v. Eleven Vehicles, Their Equip. and Accessories, 200 F.3d 203, 215 (3d Cir. 2000). Both requirements are met here. Archway's failure to file its motion for reconsideration within fourteen days appears to have been motivated not by disregard for the applicable rules, but by its desire to comply with my Order requiring that the parties file their briefs by October 25, 2010.[4] That Order could have misled Archway into believing that I had waived the time limitation of Local Rule 7.1(g). Additionally, the argument Archway raises in its motion is tenable and deserves careful consideration.

---

[4] I later amended the filing date to November 1, 2010.

James River does not assert that it has suffered prejudice by relying to its detriment on the Local Rule. I find, therefore, that waiver of Local Rule 7.1(g)'s time limitation is appropriate in this case.

I also find that if Archway's argument is correct my September 21, 2010 decision that Ardsley's professional liability insurance policy had not been cancelled would be a clear error of law. Therefore, reconsideration is warranted. See Max's Seafood Café, 176 F.3d 677.

2. Merits of the Motion for Reconsideration

In its motion for summary judgement, James River, citing Green v. Juneja, 487 A.2d 36 (Pa. Super. Ct. 1985),[5] argued that 40 Pa. Stat. Ann. § 1303.747 required Archway or Ardsley to notify the Pennsylvania Insurance Commissioner to effectuate the cancellation of its professional liability insurance. As it is undisputed that Ardsley did not notify the Insurance Commissioner of its intent to cancel its professional liability insurance, James River argued that, as a matter of law, the policy had not been cancelled. In response, Archway argued that section 1303.747 requires that notice be given only when the professional liability insurance is cancelled by the insurer. I held that Archway's argument had been foreclosed by Green.

Now Archway advances for the first time a different argument–that section 1303.747 imposes upon the insurer, not the insured, the duty to notify the Commissioner of any

---

[5] In Green, the plaintiff had been injured by the negligent medical treatment provided to her by the defendant, Dr. Ish K. Juneja. See Green, 487 A.2d at 462. She filed a declaratory judgment action against Juneja and his insurer Argonaut, seeking a determination of the effect of Juneja's cancellation of his insurance policy. See id. The trial court held that the policy had not been cancelled because Argonaut had not complied with 40 Pa. Stat. Ann. § 1303.747, which provides that "no cancellation shall take effect unless a written notice stating the reasons for the cancellation and the date and time upon which termination becomes effective has been received by the commissioner at his office." Id. at 463-65.

6

cancellation. Proceeding on that premise, Archway argues that Ardsley satisfied its obligation to inform James River of its intent to cancel the insurance policy and that Ardsley should not be held responsible for James River's failure to notify the Commissioner.

James River asserts in response that although section 1303.747 requires that the Commissioner be notified of any cancellation of professional liability insurance, the statute does not impose the duty on any particular party. It argues that both Ardsley and Archway were sophisticated participants in the professional liability insurance market and thus either was capable of notifying the Commissioner of Ardsley's intent to cancel its professional liability coverage.

Neither the Green Court nor any other Pennsylvania court has decided this question directly. Nevertheless, review of the language and structure of section 1303.747 as well as the purpose of the other sections in the subchapter convinces me that the legislature intended to impose upon the insurer the duty to report the termination of a professional liability insurance policy to the Commissioner. First, the text of section 1303.747 indicates that the legislature intended to impose upon the insurer the duty of providing notice. There are two operative clauses in section 1303.747. The first requires that the insured be notified of a cancellation before such cancellation can become effective. See 40 Pa. Stat. Ann. § 1303.747 ("cancellation . . . is not effective against the insured unless notice of cancellation was given within 60 days after the issuance of the policy to the insured . . . ."). Although the clause does not expressly specify which party must provide the notice of cancellation, it would be illogical to read it to require the insured to notify himself of the cancellation of his medical professional liability insurance. Thus, the first operative clause necessarily imposes upon the insurer the duty to notify the insured.

7

The second operative clause is the subject of this motion. It requires that "written notice . . . [be] received by the commissioner" but does not expressly state which of the parties is to provide such written notice. In statutory interpretation, however, a particular clause must not be considered in isolation. See Kokoszka v. Belford, 417 U.S. 642, 650 (1974). In light of the fact that the clause immediately preceding this one imposes upon the insurer a duty to notify the insured of the cancellation, I assume in the absence of a clear indication to the contrary that the legislature intended also to impose upon the insurer the duty to notify the Commissioner that the insured had cancelled the policy.

My conclusion is supported by the fact that section 1303.747 is located in a subchapter of the MCARE Act devoted primarily to the regulation of insurers. The first section, for example, provides that "[i]n order for an insurer to issue a policy of medical professional liability insurance . . . the insurer must be authorized to write medical professional liability insurance in accordance with . . . The Insurance Company Law of 1921." 40 Pa. Stat. Ann. § 1303.741. Other sections of the subchapter require insurers: to report specified information to the Insurance Department of the Commonwealth, id. at § 1303.743(a); to file "loss data," id. at § 1303.745; and to report payment of a settlement or judgment in a medical professional liability action, id. at § 1303.746(a).

Dicta in the Green decision also supports my conclusion. Although the Green Court did not decide this question directly, it clearly assumed that the insurer would have the duty to notify the Commissioner: "[m]oreover, to require an insurer to notify the commissioner in the event of any termination, fulfills one of the general purposes of the Act . . . , that it is to benefit those persons who have 'sustained injury or death as a result of tort or breach of contract by a health

care provider.'" Green, 487 A.2d at 39 (first emphasis added, second emphasis in original). The Court went on to hold: "[t]herefore, because <u>the insurer</u> did not comply with [section 1303.747], the cancellation was not effective and Dr. Juneja was covered by insurance during January to April 1976." Id. at 40 (emphasis added).

Finally, I am compelled by practical considerations to find that the legislature intended to impose upon the insurer, not the insured, the duty to notify the Commissioner of a cancellation. The insurer is in the better position to notify the Commissioner because, presumably, the insurer has more regular interaction with the Commissioner and the Insurance Department of the Commonwealth than the insured. Absent a clear directive to the contrary, I will not assume that the legislature intended by enacting section 1303.747 to impose an affirmative duty upon insureds, most of whom are health care providers, to notify the Commissioner prior to the cancellation of professional liability insurance.

## CONCLUSION

For the reasons discussed supra, I predict that the Pennsylvania Supreme Court would hold that section 1303.747 imposes upon the insurer, not the insured, the duty to notify the Commissioner of a cancellation of professional liability insurance. See Robertson v. Allied Signal, Inc., 914 F.2d 360, 378 (3d Cir.1990) ("In cases where the state's highest court has not considered the precise question to be answered, the federal court is called upon to predict how the state court would resolve the issue should it be called upon to do so."). I will accordingly grant Archway's motion for reconsideration and vacate my September 21, 2010 Order insofar as it entered judgment in favor of James River on Archway's claim to recover premiums paid in consideration for Ardsley's professional liability insurance.

9

There remain several questions of fact to be resolved at trial. First, whether James River or its agents received the notice of cancellation that had allegedly been faxed by Ardsley. Second, if James River or its agents had received such notice, whether Ardsley had waived the cancellation by: (1) making premium payments; (2) renewing the policy; or (3) submitting claims under the policy. Finally, assuming Archway prevails, what amount of damages is appropriate.

An appropriate Order follows.